HOOD, Judge.
This is a tort action instituted by Wilbert Kimball, individually and as administrator *308 of the estate of his minor son, Keith, arising out of an accident in which plaintiff’s son, while riding a bicycle, was struck by a pickup truck being driven by defendant, Richard Lowery. The suit was instituted against Lowery, his employer and the employer’s public liability insurer. After trial on the merits, judgment was rendered in favor of plaintiff. Defendants have appealed. The principal issue presented on this appeal is whether the accident was caused by the negligence of defendant Lowery.
The accident occurred about 4:00 p. m. on September 18, I960, on a narrow, country, graveled road in St. Landry Parish, at a point where the private driveway leading from the home of Mrs. Allen Hudspeth, located on the east side of the road, intersects or enters that thoroughfare. Just prior to the accident defendant Lowery was driving his employer’s pickup truck in a northerly direction along this road at a speed of about 35 miles per hour. As he approached the place where this private driveway enters that road a 12-year-old boy, Van Hudspeth, while riding a bicycle suddenly darted out onto the road from this driveway in front of the truck. The truck was between 110 and 130 feet south of the driveway when young Hudspeth emerged from it onto the road. Lowery applied his brakes immediately and reduced the speed of the truck, but he let up on his brakes after he determined that the boy had safely crossed the road in front of the truck. After leaving the driveway, young Huds-peth turned to his left, and while traveling south on the graveled road he met and passed the Lowery truck when the truck reached a point about 55 feet south of the driveway.
Shortly after Van Hudspeth and the truck had passed each other, and about the moment Lowery released the brakes of the truck, plaintiff’s 7-year-old son, Keith, then also emerged suddenly from the same driveway onto the road while riding on a bicycle. As soon as Lowery saw young Kimball about to enter the highway on his bicycle he immediately applied his brakes forcefully and turned to his left in an effort to avoid a collision. The boy turned to his left after entering the road, and the bicycle collided with the left front portion of the truck The collision occurred at a point in the center of the road, about four or five feet south of the projected south line of the driveway. The wheels of defendant’s vehicle skidded a distance of about 20 feet before it stopped, but the truck was brought to a complete stop within four or five feet north of or beyond the point of impact. When it came to rest, the front of the truck was about even with the south line of the driveway.
Because of heavy shrubbery located on the south side of the driveway and near the graveled road, it was impossible for Lowery to have seen the bicycle and its rider approaching the intersection until the bicycle reached a point about 19 feet from the east edge of this narrow road. Immediately prior to the time the accident occurred the two boys, Keith and Van, had agreed to “race” each other on their bicycles from the place where they were playing on the Hudspeth driveway to the Kimball home which was located about 300 yards south of the driveway and on the opposite side of the graveled road. After making this agreement, both boys ran to their bicycles, but young Hudspeth reached and mounted his first and he immediately rode out of the driveway onto the road. Plaintiff’s son, having been delayed somewhat in getting to his bicycle because he had left it several feet farther from the road, reached and mounted his bicycle shortly after Van had left, and he then pedalled furiously down the driveway toward the road in an effort to catch up with his playmate. The accident occurred just after the younger boy emerged from the driveway onto the road.
Although there is some contention that young Keith stopped before entering the gravel road, we think the evidence shows that he neither stopped nor materially reduced his speed after mounting his bicycle and starting to race. Actually, considering the speed of the truck and the distance it *309 was from the ,driveway when the older boy first entered the road, it is apparent that not more than three or four seconds could have •elapsed between the time the first bicyclist •emerged from the driveway and the time of the accident. Young Keith, therefore, after being delayed initially in getting to his bicycle, obviously did not have time thereafter to bring his bicycle to a stop, and then :start it again and travel more than half way across the road and a few feet south ■of the driveway before the accident occurred, as contended by plaintiff.
We think the evidence supports Lowery’s testimony that he reduced the speed of his truck immediately after the older boy first ■emerged from the driveway, and that the truck was traveling at a speed of from 20 to 25 miles per hour at the time young Keith later entered the road. Also, we think Lowery was correct in his estimate that his truck was about 30 to 40 feet from the intersection when he first saw young Keith .approaching the road on his bicycle. This last conclusion is based on the fact that the truck was 55 feet from the intersection when it met and passed the Hudspeth boy, that young Kimball did not enter the road until after Van had completely passed the truck, and the accident did not occur until Van had reached a point about 110 feet ■south of the driveway.
We think the applicable law is stated in Layfield v. Bourgeois, La.App. 3 Cir., 142 So.2d 799, as follows:
“.+. * * a motorist who sees or should see children near the roadside, must exercise a high degree of care in view of the propensity of young children to dart or run into the street, heedless of their own safety. This rule implies that when a motorist sees or should see a child near the roadside, he must anticipate that the child might suddenly dart into the street. Consequently, the motorist must bring his vehicle under such control that he can avoid injuring the child, notwithstanding its youthful indiscretion. (Citations omitted). On the other hand, a motorist is not an insurer of the safety of children playing near the street. If the motorist is proceeding at a lawful and reasonable speed and obeying all of the rules of the road as to proper lookout etc. he will not be held liable where a child suddenly darts or runs into his path from a concealed position in such a manner that the motorist is unable to avoid striking the child. (Citations omitted.)”
This accident occurred on a rural road, and we assume that the statutory speed limits for such roads apply, since there is no showing to the contrary. Lowery was operating his truck at a speed of 20 to 25 miles per hour, which was far below the legal speed limit, at the time plaintiff’s son suddenly darted into the road ahead of him. In our opinion Lowery was proceeding at a lawful and reasonable speed at that time. We cannot agree with plaintiff or the trial judge that since the older boy had suddenly emerged from that driveway a few mo-, ments earlier, Lowery should have been put “on notice” that “there was the possibility that there was someone else coming out of the said driveway.” We do not think the presence of one child on a bicycle in a rural area necessarily indicates that there are others on bicycles in the same area. But, assuming that Lowery should have anticipated that there would be other bicyclists in that vicinity, we think he exercised reasonable care in reducing his speed to 20 or 25 miles per hour.
Plaintiff strenuously contends, however, that Lowery was not maintaining a proper lookout and that he did not see young Keith as soon as he should have seen him. It is argued that if Lowery had seen the boy as soon as he emerged from behind the shrubbery located 19 feet east of the road he could have stopped and thus avoided the accident. Lowery testified that “I saw him the instant he came from behind the bush,” that “he came from behind that bush and he might as well been behind a wall,” and that “I saw him the minute he came from behind *310 that bush while he was still behind the fence.”
It is true, as pointed out by plaintiff, that Richard Coleman, a passenger in the Lowery truck, did not see young Kimball until he was in the road, at which time Coleman said, “We didn’t have a chance in the world of stopping.” Robert Jamison, the only other eyewitness to the accident besides Lowery and Coleman, also did not see young Kimball until he entered the road, but Jamison was approaching the scene from the north and his view of the driveway was completely obstructed until the bicycle reached the road, so he could not have seen the boy before that time. He stated that “all at once that boy drives off the driveway right on in front of that truck. — was no way for him not to hit him, he could have been driving five miles he would have hit him. — .” In our opinion the fact that the passenger in the truck with Lowery did not see the bicycle until it emerged from the driveway does not disprove Lowery’s statement that he did see the boy before that instant, and we think the physical facts support Lowery’s testimony that he saw the boy as soon as it was possible for him to do so.
As we have already pointed out, Lowery was traveling at a speed of about 35 miles per hour when the first bicycle rider suddenly came out of the driveway. He was between 110 and 130 feet from the driveway at that time and he brought his truck to a complete stop within that distance. According to a number of frequently used stopping distance charts, it appears that almost all of that distance would be required in order for Lowery to bring his truck to a stop after he observed the first boy enter the road ahead of him. See Blashfield Cyclopedia of Automobile Law and Practice, Vol. 9C, p. 413 (73 feet at 30 mph, 115 feet at 40 mph); Am.Jur.2d, Desk Book, Doc. 176, p. 456 (145 feet at 35 mph); Traffic Institute, Northwestern University, May, 1957, Exhibits 9 and 10, pp. 15 and 16 (117 to 131 feet at 35 mph) ; and Tulane Law Review, Vol. XIV, p. 502 (68.3 to 183 feet at 30 mph, and 106.7 to 310.7 feet at 40 mph, depending on conditions). Since Lowery was driving a truck and was on a gravel road his minimum stopping distance was perhaps greater than would be that for art automobile on a hardsurfaced highway. Yet, the evidence shows that Lowery brought his truck to a stop as soon as he could reasonably be expected to do so after the first bicyclist came into his view.
Also, as has already been pointed out, Lowery was 30 or 40 feet from the driveway and-was driving at a speed of 20 to 25 miles per hour when the second bicycle rider came into his view. According to the same stopping distance charts, it appears that Lowery brought his truck to a stop as soon as he could reasonably be expected to do so after he saw or should have seen young Kimball approaching the road.
Even if we disregard the distance within which Lowery brought his truck to a stop and assume that he should have known that young Kimball was going to emerge out of the driveway ahead of him, we think he completely exonerated himself from negligence by bringing his truck to a complete stop before it entered the intersection of the road and the driveway. We have already pointed out that the collision occurred four or five feet south of the intersection, before Lowery’s truck had reached the south line of the driveway.
Under the facts presented here, we think the trial court erred in finding that defendant Lowery was negligent and in holding that defendants are liable for the damages sustained by plaintiff as a result of this accident. In view of this conclusion it is unnecessary for us to consider the plea of contributory negligence filed by defendants.
For the reasons herein set out the judgment appealed from is reversed and judgment accordingly is rendered in favor of defendants and against plaintiff, rejecting plaintiff’s demands at his costs. The costs of this appeal are assessed to plaintiff-appellee.
Reversed.